Law Office of

# Justin A. Zeller, p.c.

Justin A. Zeller
jazeller@zellerlegal.com

John M. Gurrieri
jmgurrieri@zellerlegal.com

Telephone: 212.229.2249
Facsimile: 212.229.2246

May 22, 2020

**VIA ECF**

Hon. George B. Daniels, United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse

Re: *Rojas-Maravilla v. Grand Central Star Cafe, Inc.*, 19 CV 10178 (GBD)

Dear Judge Daniels:

  This letter concerns the dismissal of this action with prejudice and the Court's approval of the attached settlement agreement as fair. The defendants are Grand Central Star Cafe, Inc. and Willie Gomez (the "defendants"). The plaintiff, with defendant's consent, hereby moves for an order dismissing this action with prejudice and approving the settlement agreement as fair.

  The parties have executed a settlement agreement. The plaintiff has agreed to release the defendant and its parents, subsidiaries, divisions, affiliates, successors, and related companies, and the officers, directors, shareholders, agents, trustees, employees, attorneys, and representatives of all the claims made in the complaint in exchange for $7,500.00. If the defendants fail to make payment pursuant to the agreement, the plaintiff may, after notifying the defendant, move the Court for a judgment against the defendants for the total settlement payment plus $5,000.00 minus any amount the defendants have already paid. The settlement agreement provides for eight payments, paid over seven and one-half months, with the first payment due March 11, 2020. Payment of due payments will begin after approval.

  Of the $7,500.00, $4,598.40 will be distributed to the plaintiff and $2,901.60 will be distributed to the plaintiff's attorneys. The settlement agreement is enclosed.

  This action arises under the Fair Labor Standards Act, the Minimum Wage Act, and the Wage Theft Prevention Act. The plaintiff alleges that the defendants violated the wage and hour laws and that the defendant owes the plaintiff back wages and liquidated and statutory damages. The plaintiff commenced this action with the filing of a lawsuit on November 1, 2019.

  The plaintiff alleges that plaintiff worked for the defendants from approximately 2009 until November 2017, in their restaurant as a cook. The plaintiff's calculations show he is owed $8,358.94 in wages for unpaid minimum wages, overtime, and uniform maintenance pay. The plaintiff's calculations show 47.5 hours of work per week until August 2015 and then 37.5 hours per week thereafter. These calculations further break down to $3,028.93 owed for minimum waegs, $2,918.04 owed for overtime premium, and $2,410.98 owed for uniform maintenance pay. The plaintiff's calculations show a total of $21,715.89 in damages inclusive of liquidated damages and $5,000.00 pursuant to the Wage Theft Prevention Act.

Defendants have provided a competing calculation based on their time records dating back to 2016, and extrapolating based on those time records for the dates where the defendants do not have records, assuming that Plaintiff actually worked for any period other than what was recorded on the time records. Defendants' calculations show $4,652.41 owed in wages, and $14,304.81 owed inclusive of liquidated damages and the $5,000.00 for failure to provide paystubs in violations of the Wage Theft Prevention Act. The plaintiff concedes that, because this calculation was based on punch-in and punch-out time cards that it is likely more accurate than plaintiff's calculation which is based on memory. Additionally, trying to prove that the defendants' calculation is incorrect will pose a serious litigation risk to the plaintiff because the Court will take as true calculations based on the defendants' records, and the plaintiff will face a serious burden trying to prove that the time records should not be followed in determining the total amount owed.

The settlement is further justified based on the financial dire straits of the defendants. The defendants have closed their restaurant, and in addition, Mr. Gomez has suffered a heart attack and is facing serious medical bills, is currently hospitalized, and unable to work.

Therefore, the settlement amount, due to litigation risks, defendants' records, and the defendants' financial issues, is justified, fair, and reasonable to the plaintiff. He is getting nearly the full amount owed to him under the defendants' calculations.

Employees cannot waive or settle claims under the Fair Labor Standards Act for unpaid minimum wages or overtime, except by settlements supervised by the Department of Labor or judicially-approved settlements of a civil action. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203, 206 (2d Cir. 2015).

The parties represent to the Court that the settlement agreement is fair to the plaintiff, reasonably resolves bona fide disagreements between the plaintiff and defendants about the merits of the plaintiff's claims; and demonstrates a good faith intention by the parties that their claims for liability and damages be fully and finally resolved and not relitigated in the future.

In *Cheeks*, the Second Circuit did not reach the issue of whether the settlement in that case was worthy of approval. *See id.* at 203 n.3. Here, the parties believe the settlement agreement is fair and reasonable because: (1) the plaintiff is collecting above the total amount of minimum wage and overtime damages he is owed, including the hours worked by plaintiff and the wages received by plaintiff; and (2) the settlement agreement satisfies all the factors set forth in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2015).

The first *Wolinsky* factor examines "the plaintiff's range of possible recovery." *Id.*

The plaintiff's total possible recovery was outlined. The amount the plaintiff is collecting under the settlement agreement is fair and reasonable.

The second *Wolinsky* factor examines "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.'" *Id.* Settling the parties' claims at this point will avoid continuing litigation costs for all parties. Had this action not settled, the plaintiff would have proceeded with litigating against the defendants, would have moved for conditional certification of a collective action and a class action, and eventually would have proceeded to trial.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id.* All parties face the inherent risks and expenses imposed by proceeding to a potential trial and post-judgment collection proceedings. The plaintiff faces significant risk in this case because it would be difficult for the plaintiff to find witnesses to corroborate his claim in the face of substantial payroll records that show the plaintiff worked fewer hours than he is claiming.

The fourth *Wolinsky* factor examines "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'" *Id.* This agreement was reached by arms-length negotiation by the parties and their counsel. The parties received assistance from a Court-approved mediator, but settled prior to the mediation session. The plaintiff is represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in representing employees in wage and hour litigation. The plaintiff's counsel has represented plaintiffs in over 300 actions for such claims in the Southern District of New York alone, and many others in the Eastern District of New York and the District of New Jersey, and in the courts of the State of New York. The defendants' counsel in this case is Raymond Nardo, P.C., which has substantial experience representing corporations in wage and hour matters in federal litigation.

The fifth *Wolinsky* factor examines "possibility of fraud or collusion." *Id.* There is no evidence of any fraud or collusion in this case between the parties to circumvent the wage and hour laws. The agreement via settlement negotiations with opposing counsel and a mediator.

Lastly, the Court must consider evidence of any factors weighing against approval. There are no party plaintiffs in this action and there is no effect on the right of any putative party plaintiff to commence his or her own action. In addition, a class was never certified and this settlement is only on behalf of the plaintiff.

The settlement agreement also resolves the plaintiff's attorney's fees and costs. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the Minimum Wage Act, N.Y. Lab. Law § 650, *et seq.*, Section 191 of the New York Labor Law, and the Wage Theft Prevention Act, 2010 N.Y. Laws 564. These laws, in combination, provide to a prevailing party in a civil action an award of attorney's fees and costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)–(2), 663(1); *see also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012). This award is mandatory. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

The amount of attorney's fees to which a party is entitled is based on the presumptively reasonable fee, sometimes called the lodestar. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189–90 (2d Cir. 2008). The presumptively reasonable fee is the product of the reasonable hours in the case and the reasonable hourly rate. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).[1]

The reasonable hourly rate is determined by whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). However, the Court may adjust the hourly rate to account for other case-specific variables, *Arbor Hill*, 522 F.3d at 184, including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*:

---

[1] Defendants take no position on Plaintiff's application for counsel fees.

>(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved or the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability of the case;' (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson*, 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989); see also *Arbor Hill*, 522 F.3d at 186 n.3 (citing the *Johnson* factors). But the Court need not make separate findings as to all twelve *Johnson* factors. *Lochren v. Cnty. of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009).

The plaintiff is represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in wage and hour litigation and incorporated in 2005. The sole shareholder of the law firm is Justin A. Zeller, an attorney who graduated law school in 2002 and has specialized in wage and hour law since 2005. Associated with the law firm was Brandon D. Sherr, who graduated law school in 2010, who was associated with this law firm until June 2019, and John M. Gurrieri who graduated law school in 2013, and was associated with the law firm from February 2014 until July 2017 and again since July 2019, also associated with the law firm when he billed hours was Michael Levy and Michael Grant who were law school graduates.

Recent reasonable hourly rates awarded in similar cases range from $200 to $600 per hour for similar small firms. *See Rosendo v. Everbrighten Inc.*, No. 13 CV 7256, 2015 U.S. Dist. LEXIS 50323, at *23–24 (S.D.N.Y. Apr. 7, 2015) (finding rates for three attorneys from a small firm specializing in wage and hour litigation over five other cases to be from $200 to $425 and awarding between $225 and $400); *Guallpa v. NY Pro Signs Inc.*, No. 11 CV 3133, 2014 U.S. Dist. LEXIS 77033, at *28–30 (S.D.N.Y. May 27, 2014) (finding rates for three attorneys from one small firm over three other wage and hour cases to be from $350 to $600 and awarding within the same range in wage and hour case).

Mr. Sherr's reasonable hourly rate has been considered four times by this Court and Mr. Sherr was found to be entitled to rates of $300 in 2015 and 2016, and $200 and $250 per hour in 2013. *See Carvente-Avila v. Chaya Mushkah Rest. Corp.*, No. 12 CV 5359, slip op. at 6 (S.D.N.Y. May 10, 2016); *Patterson v. Copia NYC LLC*, No. 15 CV 2327, slip op. at 15–16 (S.D.N.Y. Dec. 29, 2015); *Maldonado*, 2013 U.S. Dist. LEXIS 70815, at *12; *Palacios v. Z & G Distribs., Inc.*, No. 11 CV 2538, 2013 U.S. Dist. LEXIS 112676, at *18 (S.D.N.Y. Aug. 6, 2013).

Mr. Gurrieri's reasonable hourly rate has been considered and he was found to be entitled to a rate of $225 in 2018, $250 and $225 per hour in 2017; and $250 per hour in 2015. *See Alvarez*, slip op.; *Gonzalez-Diaz*, 2017 U.S. Dist. LEXIS 185397, at *14; *Duran*, 2017 U.S. Dist. LEXIS 82249, at *20; *Patterson,* slip op. at 15–16.

Michael Levy's and Michael Grant's hourly rate have never been considered.

Certain of the *Johnson* factors are applicable in consideration of the reasonable hourly rate, specifically the customary fee, whether the fee is fixed or contingent, and the undesirability of the case. The plaintiff has entered a contingent fee agreement with this firm. The agreement provides a backup hourly rate of $425 for work performed by Mr. Zeller, and $350 per hour for work performed by associates. It is the experience of this firm that wage and hour cases have a substantial risk that, even if ending in a judgment, the judgment will be uncollectable or very difficult to collect. Violations of the wage and hour laws also frequently indicate financial distress or insolvency. Law firms that represent employees in such cases on a contingent fee basis may never recover their attorney's fees or costs. The market rate for legal services for such clients is therefore higher because of these risks. This is such a case against a small restaurant employer. Accordingly, the reasonable hourly rate should be adjusted to reflect the contingent fee, the customary rate, and to compensate for the risk inherent in taking this case.

The plaintiff would have requested that the Court find reasonable hourly rates of $400 for Mr. Zeller, $300 for Mr. Sherr and Mr. Gurrieri, and $250 for Mr. Levy and Mr. Grant. These rates are within the range previously found reasonable for this nature of action in this forum, reflect adjustments for the above-discussed factors, and allow a modest increase over rates previously awarded to these attorneys commensurate with their increased experience.

To determine the reasonableness of the hours, a party seeking an award of attorney's fees must submit contemporaneous time records indicating the hours and the nature of the work done. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *Puglisi v. Underhill Park Taxpayer Ass'n*, 964 F. Supp. 811, 817 (S.D.N.Y. 1997).

The plaintiff includes herewith on behalf of the Law Office of Justin A. Zeller, P.C., the contemporaneous time records of the plaintiff's counsel. The included description with each entry corresponds to the descriptions in the American Bar Association's Uniform Task-Based Management System, a broadly recognized system of documenting hours. Courts even recommend its use for motions for attorney's fees. *See Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1174 (N.D. Cal. 2004); *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1189 (N.D. Cal. 2004) ("Although the court considers plaintiff's data in the manner presented, the American Bar Association's "Litigation Code Set" provides a more uniform methodology for categorizing requested hours. *See* American Bar Association ("ABA"), Uniform Task-Based Management System Information, *available at* [http://www.americanbar.org/groups/litigation/resources/uniform_task_based_management_system.html]. The ABA template commends itself to parties applying for fee awards."). Similar productions by the plaintiff's counsel of such contemporaneous time records have been found by the Court to be "complete." *Palacios*, 2013 U.S. Dist. LEXIS 112676, at *18–19.

Mr. Sherr's hours in this action are .1; Mr. Zeller's, .2; Mr. Gurrieri's, 7.6; Mr. Levy's, 2.9, and Mr. Grant's, 5.2.

The 16 total hours sought are reasonable, appropriately delegated among the involved attorneys requisite to their experience, and necessary to the litigation of this action. The plaintiff would have been entitled to an attorney's fees award, based on the presumptively reasonable rate, of $4,415.00.

Additionally, the plaintiff's costs are the $401.60, which includes a $400.00 filing fee, $.40 for searching case records prior to filing, and $.70 searching a database for a report on defendants, and $.50 for postage. This expense was prepaid by the plaintiff's counsel. The plaintiff includes herewith an enumeration of these costs.

The total of attorney's fees based on the presumptively reasonable rate and costs is $4,816.60. The proposed allocation of $2,901.60 because the lodestar exceeds the amount collected in this case. Nothing additional is to be paid by the plaintiff to the plaintiff's counsel. Further, the total amount apportioned as attorney's fees is one-third plus costs, and Courts in this Circuit regularly approve fees of one-third plus costs. *See, e.g.*, *Rojas et al. v. Bronx Moon LLC*, No. 17-CV-5825 (KMK), 2018 WL 4931540, at *4 (S.D.N.Y. Oct. 10, 2018) (finding attorneys' fees representing one-third of the settlement amount plus costs reasonable); *Marquez v. Roberto's Rest. Corp.*, No. 16 Civ. 2304 (HBP), 2017 WL 5468760, at *3 (S.D.N.Y. November 13, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Gutierrez v. Highridge Bagels, Inc.*, No. 17 Civ. 1451 (VLB), 2017 U.S. Dist. LEXIS 90984, at *2 (S.D.N.Y. June 12, 2017) ("[T]he Court finds the attorneys' fees, which are one-third of the recovered amount plus costs, to be fair and reasonable[.]"); *Redzepagic v. Hammer*, No. 14 Civ. 9808 (ER), 2017 WL 1951865, at *2 (S.D.N.Y. May 8, 2017) ("One-third contingency fees ... are commonly accepted in the Second Circuit in FLSA cases.").

In addition, the proposed allocation was negotiated and agreed to between the plaintiffs and the plaintiffs' counsel. *See In re Lawrence*, 24 N.Y.3d 320, 339 (2014). Nothing additional is to be paid by the plaintiffs to the plaintiffs' counsel. The proposed allocation was negotiated and agreed to between the plaintiff and the plaintiff's counsel.

For the foregoing reasons, the parties request the Court find the settlement agreement to fairly compromise the plaintiff's claim under the Fair Labor Standards Act and approve the settlement agreement as fair and reasonable and dismiss this action with prejudice against all defendants.

Respectfully submitted,

*John Gurrieri*

John M. Gurrieri

Enclosures (3)